OPINION
{¶ 1} Defendant-appellant Kevin Dye appeals his conviction and sentence from the Richland County Court of Common Pleas on one count of failure to comply with the order or signal of a police officer. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 9, 2003, the Richland County Grand Jury indicted appellant on one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B)(3), a felony of the third degree. The indictment contained a felony specification that appellant's operation of the motor vehicle caused a "substantial risk of serious physical harm to persons or property." At his arraignment on May 6, 2003, appellant entered a plea of not guilty to the charge contained in the indictment.
 {¶ 3} Thereafter, a jury trial commenced on May 13, 2004. The following testimony was adduced at trial.
 {¶ 4} On March 17, 2003, at approximately 9:45 p.m., Deputy Raymond Frazier of the Richland County Sheriff's Office was on Fairfax Avenue assisting another officer, Deputy Broom, on an assault call. As Deputy Frazier, who was in uniform, was standing on the side of the road waiting for the crime lab, he observed a white minivan driven by appellant coming southbound on Fairfax Avenue. The deputy testified that "[i]t was common knowledge that he [appellant] did not have a driver's license, and I knew that from other officers' dealing with him." Transcript at 98. The deputy further testified that earlier the same day "[w]e had discussed [appellant] and the white minivan in our watch meeting. One of our detectives had made mention that Kevin Dye was operating that vehicle and did not have a driver's license." Transcript at 99.
 {¶ 5} Deputy Frazier told Deputy Broom that appellant had driven by in a van and that he "was going to go try to stop him." Transcript at 100. Deputy Frazier then got into his cruiser, made a U-turn in the middle of the street, activated the cruiser's lights, and got within a couple of car lengths of appellant's van. Appellant, however, failed to stop and continued southbound on Fairfax Avenue to State Route 39, where he failed to stop at a stop sign. When Deputy Frazier was about a car length behind appellant, appellant made a right onto Lenox. During such time, Deputy Frazier called in to check appellant's driving status and was told that appellant had no driving privileges.
 {¶ 6} The deputy and appellant continued northbound on Lenox and, midway on Lenox, the two reached speeds of approximately 70 to 75 miles per hour. Deputy Frazier then activated his siren. However, appellant failed to stop at the stop sign at the corner of Lenox and Hanna Road, "squealing his tires as he went around the corner." Transcript at 101. While the speed limit on Hanna Road is 35 miles per hour, on the "connecting streets" it is 25 miles per hour. Transcript at 102. Appellant, who was traveling at around 70 to 75 miles per hour on Hanna Road, then made a left onto Burger Avenue while traveling at the same rate of speed. The following is an excerpt from Deputy Frazier's testimony:
 {¶ 7} "We continued on Burger north and to Burger and Hahn Road where he didn't stop at the stop sign. When we drove around out there, you see the stop sign, there is a house on the corner, I believe the address is 1142, he went around the stop sign pretty sharp and parked right where that blue vehicle was that was there today.
 {¶ 8} "When he pulled in there, he slid in the gravel and the van was rocking back and forth as he jammed it into park or whatever it is he was doing. At that point I observed the driver's door fly open, and I observed Mr. Dye jump out and start running from me, at which time I jumped out and yelled, Kevin, stop, and we foot-chased and pursued from there." Transcript at 101-102. Appellant failed to stop when ordered to do so and was apprehended in the backyard of 1142 Burger.
 {¶ 9} At trial, Deputy Frazier testified that there were no street lights in the area of Hahn Road and Burger and that "it's dark." Transcript at 105. According to the deputy, "[i]t's the darkest area of the neighborhood. We commonly refer to that down there as being blacked out." Transcript at 105. During Deputy Frazier's pursuit of appellant, there were no other vehicles on the roadway. However, Deputy Frazier testified that the Sheriff's Department had just finished up with a fight/assault call on Fairfax "and we had approximately six other officers out there, and stopping vehicles that may have been involved in this assault." Transcript at 106. The deputy further testified that, during the pursuit, there were residents from the area outside in their front yards and next to the roadway watching the police activity. The following testimony was adduced when Deputy Frazier was asked to describe the roadway in that area:
 {¶ 10} "A. It's very narrow. If you had two vehicles kind of wide and you have cars parked alongside the road as you do in the daytime, it sometimes can be hazardous.
 {¶ 11} "Q. Do people routinely park along the side of the road there in the evening as well?
 {¶ 12} "A. Yes, they do.
 {¶ 13} "Q. Does that create situations where it's also — visibility is a problem?
 {¶ 14} "A. Yes. We get calls out there frequently to come out and ask people to move their vehicles so the people can see to back out of their driveways and so forth." Transcript at 106-107.
 {¶ 15} Deputy Frazier testified that appellant's operation of his vehicle the night in question was "reckless" and that he was concerned that appellant might wreck his vehicle during the pursuit based on the way that appellant was taking the corners and appellant's rate of speed. Transcript at 107. According to the deputy, a total of eight officers, not counting himself, responded to the call regarding the pursuit and that the officers would have "run what we call hot, lights and sirens." Transcript at 112. The deputy testified that neither he nor appellant was injured in any way.
 {¶ 16} At the conclusion of the evidence and the end of deliberations, the jury, on May 13, 2004, found appellant guilty of failing to comply with the order or signal of a police officer. The jury further found that the State proved beyond a reasonable doubt that appellant's operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property. As memorialized in an entry filed on May 18, 2004, the trial court sentenced appellant to four years in prison.
 {¶ 17} It is from his conviction and sentence that appellant now appeals, raising the following assignments of error:
 {¶ 18} "I., The trial court committed prejudicial plain error acquittal of the greater offence [sic] and instruction of the lesser included offence [sic] to defendant/appellant by state's insufficient evidence witness, deputy officer, raymond frazier's testimony to prove beyond a reasonable doubt for the jury to find: "mr. dye's operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property", based on legally insufficient evidence to support the felony specification, as a matter of fact and law, in violation of and guaranteed by the due process clause of the fifth, sixth, and fourteenth amendment rights of the united state's and article I, Sec. X XVI of the ohio constitutions; orc 2921.331(5)(ii); ORC 2901.01(A)(5), (a-e), (6), (ab), and (8).
 {¶ 19} "II. The trial court committed prejudicial plain error to defendant/appellant by instructions and misleading mens rea of ORC2901.01(A)(8) and expressed statement and opinion of facts of ORC2901.01(A)(5) (a-e) (6) (ab) to prove beyond a reasonable doubt and jury find the greater offence [sic] felony specification elements OF ORC2921.331(5)(ii) by appellant's indictment, in violation of and guaranteed by the due process clause of the fifth, sixth and fourteenth amendment rights of the united state's and article I, SEC. X SVI of the ohio constitutions to a fair impartial trial, jury verdict of acquittal of the greater offence [sic], conviction and sentence of lesser included offence [sic]."
 {¶ 20} This case comes to us on the accelerated calendar. App. R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 21} "(E) Determination and judgment on appeal.
 {¶ 22} "The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the courts decision as to each error to be in brief and conclusionary form.
 {¶ 23} "The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 24} This appeal shall be considered in accordance with the aforementioned rule.
 I {¶ 25} Appellant, in his first assignment of error, argues that his conviction for failing to comply with the order or signal of a police officer, a felony of the third degree, is not supported by sufficient evidence. Appellant specifically contends that there was insufficient evidence that his operation of a motor vehicle "caused a substantial risk of serious physical harm to persons of property." We disagree.
 {¶ 26} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 27} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 28} As is stated above, the jury found that the State had proven beyond a reasonable doubt that appellant's operation of his motor vehicle on the day in question "caused a substantial risk/physical harm to persons or property." "Substantial risk" is statutorily defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Serious physical harm to persons" and "serious physical harm to property" are both defined in R.C. 2901.01. The statute provides, in pertinent part, as follows: (5) "Serious physical harm to persons" means any of the following: . . .
 {¶ 29} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 30} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 31} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 32} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
 {¶ 33} "(6) "Serious physical harm to property" means any physical harm to property that does either of the following:
 {¶ 34} "(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;
 {¶ 35} "(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time."
 {¶ 36} Upon our review of the record, we find that, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant's operation of his minivan on March 17, 2003, created a "substantial risk of serious physical harm to persons or property." As is set forth above, testimony was adduced at trial that appellant drove 70 to 75 miles per hour in 25 mile per hour and 35 mile per hour zones, and that appellant ran stop signs and skidded around corners with his tires "squealing". Testimony was also adduced that the pursuit occurred in a residential area of narrow, dark streets and that there were other officers in the area in response to an earlier assault call. Furthermore, testimony was adduced that, at the time of the pursuit, area residents were outside in their yards and/or along the roadway watching the police activity. Both the officers and the residents clearly were endangered by appellant's reckless driving.
 {¶ 37} Based on the foregoing, appellant's first assignment of error is overruled.
 II {¶ 38} Appellant, in his second assignment of error, argues that the trial court committed plain error in instructing the jury on the felony specification contained in the indictment. As is stated above, the indictment contained a felony specification that appellant's operation of his motor vehicle caused a "substantial risk of serious physical harm to persons or property." Appellant now maintains that, but for such error, he would not have been convicted of the felony specification.
 {¶ 39} Since appellant's counsel did not object at trial to the jury instructions, this assignment of error must be reviewed under a plain error analysis. Under the plain error doctrine, reversible error occurs only if "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. Further, notice of plain error is to be taken only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. at paragraph three of the syllabus.
 {¶ 40} Appellant, in the case sub judice, specifically takes issue with the following language in the jury instructions:
 {¶ 41} "If your verdict is guilty of this crime, you will also have to decide, beyond a reasonable doubt, whether Mr. Dye's operation of the motor vehicle causes substantial risk of serious physical harm to persons or property.
 {¶ 42} "If your verdict is not guilty, you will not decide the additional substantial risk question.
 {¶ 43} "Now, a substantial risk means a strong possibility, as contrasted with a remote possibility, that serious physical harm may occur. We talked about serious physical harm to persons or property." Transcript at 190.
 {¶ 44} According to appellant, such instruction was "so one-sided and misleading appellant's jury was virtually instructed to consider, decide, and find facts beyond a reasonable doubt, by appellant's indictment, on the judge's words alone to find the greater offence [sic] felony specification elements . . ."
 {¶ 45} We, however, concur with appellee that the jury instructions given by the trial court were, as a whole, accurate, complete and comprehensive. The jury was clearly instructed that they must first find appellant guilty beyond a reasonable doubt of the offense of failing to comply with the order or signal of a police officer before they could consider the "substantial risk of serious physical harm to persons or property" specification. Moreover, as set forth above, there was sufficient evidence adduced at trial that appellant, in driving his minivan, caused such a risk. In short, we cannot say that, but for the alleged error, the outcome of the trial would have been different.
 {¶ 46} Appellant's second assignment of error is, therefore, overruled.
 {¶ 47} Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.
By: Edwards, J., Hoffman, P.J. and Boggins, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.